IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PERFORMANCE AFTERMARKET PARTS GROUP, LTD., a Texas Limited Partnership, and G & C AUTOMOTIVE DISTRIBUTORS, INC., a Texas Corporation, | § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO._____ |
| vs. | § § § | JURY TRIAL DEMANDED |
| TI GROUP AUTOMOTIVE SYSTEMS, LLC, a Delaware Limited Liability Company | § § § § | |
| Defendant. | § | |

**PLAINTIFFS' COMPLAINT AND REQUEST FOR DECLARATORY RELIEF**

Plaintiffs, PERFORMANCE AFTERMARKET PARTS GROUP, LTD., a Texas Limited Partnership (hereinafter "Performance Aftermarket") and G & C AUTOMOTIVE DISTRIBUTORS, INC., a Texas Corporation (hereinafter "G & C Automotive") (collectively referred to as "Plaintiffs"), state their Complaint and Request for Declaratory Relief against Defendant TI Group Automotive Systems, LLC ("TI Group" and/or "Defendant").

**I. PARTIES**

1.    Performance Aftermarket is a limited partnership organized under the laws of the State of Texas and is qualified to do business in the state of Texas.  Performance Aftermarket's principal place of business is in Sugar Land, Texas.  Performance Aftermarket is engaged in the supply of automotive products, including fuel pumps, to companies predominantly outside the United States.

2.    G & C Automotive is a corporation organized under the laws of the State of Texas and is qualified to do business in the state of Texas.  G & C Automotive's principal place of business is in Sugar Land, Texas.

3.    On information and belief, Defendant TI Group is a Delaware Limited Liability Corporation with its principal place of business located at 12345 East Nine Mile Road, Warren, Michigan.  Defendant TI Group has been qualified to do business in Texas since at least October 5, 2001 when it submitted an Application for Certificate of Authority by a Limited Liability Company with the Texas Secretary of State.  A copy of this application is attached hereto as Exhibit "A".  Defendant TI Group may be served with citation and summons by serving its registered agent, CT Corporation, 350 North Saint Paul Street, Dallas, Texas 75201.

## II. VENUE AND JURISDICTION

4.    Jurisdiction of this Court arises under the Federal Declaratory Judgments Act, Title 28, United States Code, Sections 2201 and 2202, and under the laws of the United States concerning actions relating to patents, Title 28, United States Code, Section 1338(a) and/or 1338(b).

5.    Venue of this action is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 (a) and (b) as TI Group conducts business within the judicial district, a substantial part of the events or omissions giving rise to the claims occurred within this judicial district, and a substantial part of property that is the subject of the action is situated within this judicial district. Venue is also proper under 28 U.S.C. § 1391 (c) as TI Group is subject to personal jurisdiction in the Southern District of Texas at the time this action commenced.

2

### III. FACTUAL BACKGROUND

**A.    Patents and Allegedly Infringing Products**

6.    On August 29, 1989, U.S. Letter Patent No. 4,860,714 entitled "In-Tank Fuel Pump Assembly for Fuel-Injected Engines" was issued to Whitehead Engineered Products, Inc.   ("the '714 Patent").   A copy is attached hereto as Exhibit "B".   This patent was assigned by the owner to TI Group, which now owns the patent.

7.    On September 26, 1995, U.S. Letter Patent No. 5,452,701 entitled "Turbine Fuel Pump Assembly with Fuel Jet" was issued to Walbro Corporation ("the '701 Patent").   A copy of which is attached hereto as Exhibit "C".   This patent was assigned by the owner to TI Group, which now owns the patent.

8.    On May 8, 2001, U.S. Letter Patent No. 6,227,819 entitled "Fuel Pumping Assembly" was issued to Walbro Corporation ("the '819 Patent").   A copy is attached hereto as Exhibit "D".   This patent was assigned by the owner to TI Group, which now owns the patent.

9.    Plaintiffs, have manufactured, sold and/or offered for sale within the past four years, certain fuel pump apparatus, including the "P-41K Fuel Pump" and "P-43K Fuel Pump" (hereinafter collectively referred to as the "Fuel Pumps" at issue), and the "P-22M module" (hereinafter "Module"), which are pictured on Plaintiffs' websites at www.pefp.com and www.surplusparts.com, and other and similar equipment.

3

**B.      Events Leading Up To Litigation**

10. Defendant TI Group has charged Performance Aftermarket with infringement of its said patents and all claims thereof by reason of the manufacture and offering for sale and selling of its said apparatus, by letters dated:

> (a)     September 27, 2005 - addressing the '701 Patent (letter is attached as Exhibit "E");
>
> (b)     October 6, 2005--Responding to TI Group's, September 27, 2005 (which is attached as Exhibit "F"); and
>
> (b)     October 17, 2005 - addressing the '701, '714, and '819 Patents (letter attached as Exhibit "G").

11. TI Group's September 27, 2005 correspondence was vague as to why TI Group believed Performance Aftermarket's products infringed one of TI Group patents. Counsel for Performance Aftermarket sent TI Group a response dated October 6, 2005 requesting a more specific detailed explanation for TI Group's factual and legal conclusion that Performance Aftermarket somehow infringed the '701 Patent.

12. In the October 17, 2005 letter, TI Group expressed an interest in obtaining Performance Aftermarket's "drawings of …modules in which these pumps were used so that we can make a more thorough analysis of this matter." *See* Exhibit "G".

13. TI Group also noted, in its October 17, 2005 correspondence, that some of the specific claims in the patents might be infringed by Performance Aftermarket's Fuel Pumps and Module and set out those claims in the letter. Exhibit "G".

14. Performance Aftermarket reviewed that correspondence and the patents and concluded that TI Group had not examined Performance Aftermarket's products.

4

15.   Performance Aftermarket was concerned that TI Group was in possession of counterfeit or mislabeled products and that someone or some company was attempting to provoke friction or a lawsuit between TI Group and Plaintiffs.

16.   On November 1, 2005, Performance Aftermarket's counsel contacted TI Group's counsel and counsel for Plaintiffs and TI Group's counsel came to a preliminary agreement, wherein TI Group's counsel stated he would recommend that TI Group provide samples of the allegedly infringing products to Performance Aftermarket.   The purpose of providing such samples was to eliminate the possibility that TI Group was making judgments about potential patent infringement based on its examination of a counterfeit product.

17.   During the period of November 1-4, 2005, both TI Group and Plaintiffs attended the Automotive Aftermarket Products Exposition ("AAPEX") (the "Trade Show") in Las Vegas, Nevada.

18.   The Trade Show is a very large show comprised of all the major customers in the automotive parts business and, according to AAPEX, the 2005 Trade Show was attended by about 117,674 visitors representing all segments of the automotive service and retail industries with more than 9,349 international companies from 124 countries.

19.   Since 2002, Performance Aftermarket and/or G & C Automotive's sales in Mexico have doubled.   Customers in Mexico are purchasing fuel pumps from Plaintiffs instead of TI Group and the distributors/alliances in TI Group's supply chain.

20.   G & C Automotive and Performance Aftermarket sponsored a meeting room for the Overseas Automotive Counsel, where numerous customers and potential customers visited to discuss existing and potential business relationships.   The Overseas Automotive Counsel is a non-profit group of all forms of international automotive trade.

5

21.  TI Group's precipitous drop in its share of the Mexican market, combined with Plaintiffs' success at the Trade Show identified Plaintiffs as significant, emerging competitors in the automotive aftermarket fuel pump market and became a source of concern and anger to TI Group's management.

22.  During the Trade Show, Plaintiffs' principals and employees were informed that statements/rumors were being made and circulated to the effect that Performance Aftermarket and/or G & C Automotive was "counterfeiting products."

23.  These statements/rumors were false, misleading and designed to injure Performance Aftermarket and/or G & C Automotive's business reputation.

24.  On information and belief, TI Group was the source of these rumors and allegations of counterfeiting.

25.  Even *assuming* that Performance Aftermarket's products infringe the subject patents, which they do not, the allegations of counterfeiting are still false, misleading and designed to injure Professional Aftermarket and/or G & C Automotive business reputation.

26.  Counterfeiting products is a criminal and civil violation of United States law.

27.  A company's reputation in the aftermarket automotive parts market is extremely important, as the group of potential customers is relatively small and a small company's ability to obtain potential business can be severely injured by criminal and/or civil allegations of counterfeiting.

28.  On November 10, 2005, counsel for Plaintiffs wrote counsel for TI Group and confirmed his understanding from November 1, 2005, that counsel for TI Group was going to discuss the preliminary agreement providing for TI Group to supply samples of the allegedly

6

infringing products to eliminate the possibility that the products in question were counterfeit, or actually manufactured by Performance Aftermarket. See Exhibit "H".

29.  Contrary to TI Group counsel's recommendation that TI Group provide samples to Performance Aftermarket, TI Group filed suit against Performance Aftermarket on November 10, 2005, in the Eastern District of Michigan (the "Michigan Action") based on claims that Performance Aftermarket was violating the three (3) patents identified above.

30.  Counsel for TI Group sent a letter attached to the Michigan Action.  A true and accurate copy of this letter and the attached complaint is appended hereto as Exhibit "I", and is incorporated herein.  TI Group's counsel stated that TI Group filed this action because:  "The client was not disposed to send any samples of their products as, at the end of the day, the issue of patent infringement is resolved by examination of the patents, and not of the articles themselves.  There seems to be a great deal of activity by your client in the apparent infringement of our client's patents as set forth in the attached Complaint and the decision was made not to wait any longer before filing this action."  (emphasis added).

31.  On information and belief, TI Group did not have a copy of drawings of the Fuel Pumps and Module at issue prior to filing the Michigan Action.

32.  On information and belief, TI Group did not reverse engineer or otherwise examine the internal operations of the Fuel Pump and Module at issue prior to filing the Michigan Action.

33.  The Michigan Action was filed before TI Group conducted a reasonable investigation of the facts underlying its patent infringement claims.

34.  In fact, TI Group filed the Michigan Action as a sham to conceal its true purpose; that is, to inhibit, impair and injure Plaintiffs' ability to compete in the automotive aftermarket fuel pump market by making false, unsubstantiated patent infringement allegations and, on

information and belief, spreading false rumors to the effect that TI Group was "counterfeiting" products.

**C.     Events Occurring After Filing of the Michigan Action.**

35.   Performance Aftermarket sent TI Group correspondence dated November 21, 2005 outlining its concerns that TI Group had not completed a reasonable investigation of the facts prior to filing the Michigan action, spreading false rumors, and that TI Group was engaging in anticompetitive conduct, rather than addressing a legitimate patent claim.   A copy of this correspondence is attached as Exhibit "J" and is incorporated herein.

36.   TI Group did not respond to the letter or otherwise deny the contentions set out  in Performance Aftermarket's November 21, 2005 correspondence.

37.   The allegations in the Michigan Action, on its face, are insufficient to state a claim for patent infringement.  The allegations specific as to each Patent provides, in pertinent part:

> ¶ 12.  The inventions described in the '714 Patent are <u>related</u> to an in-tank fuel pump assembly for fuel-injected engines which includes a reservoir having a supply port for supplying fuel to the engine and return port for receiving fuel returning from the engine.
>
> ¶ 20. The inventions described in the '701 Patent are <u>related</u> to an electrically operated fuel pump for vehicles which utilizes a turbine pump rotor operating in an annular pumping channel having circumferentially spaced inlet and outlet ports.
>
> ¶ 28. The inventions described in the '819 Patent are <u>related</u> to a fuel pump assembly for drawing fuel from a reservoir and supplying that fuel to an engine and including a fuel pumping module and an electric motor supported in a pump housing.

38.   On the face of TI Group's generic, non-specific allegations, the Michigan Action is nothing more than an attempt to expand the scope of TI Group's alleged patent rights and constitutes a misuse of its patents.

8

39.  The gravamen of a patent infringement lawsuit is to identify which specific "inventions" or "claims" in a patent have been infringed by a specific defendant's product(s) whereas TI Group simply asserts that its inventions are "related" to generic parts, components and apparatus that are contained in virtually all fuel pumps or modules on the market.

40.  Based on the facts and circumstances leading up to filing of the Michigan Action, TI Group's failure to conduct a reasonable investigation of the facts prior to filing an action, its failure to deny Performance Aftermarket's contentions of anti-competitive conduct and misuse of patents, and its failure to deny Plaintiffs' allegations, as set out in its November 21, 2005 correspondence, Plaintiffs contend that TI Group filed the Michigan Action for the unlawful purpose of inhibiting, impairing and otherwise injuring competition in the aftermarket automotive fuel pump market.  Performance Aftermarket is an emerging competitor in the overseas aftermarket fuel pump market. TI Group targeted Performance Aftermarket, and its conduct was calculated to inhibit, impair, undermine and injure Performance Aftermarket's ability to compete against TI Group in the automotive aftermarket fuel pump market.

41.  On December 8, 2005, in response to the Complaint filed by TI Group in Michigan, Performance Aftermarket filed a Motion to Dismiss the Michigan Action for lack of personal jurisdiction, as authorized by Federal Rule of Civil Procedure Rule 12(b)(2), and based on improper venue under Federal Rule of Civil Procedure Rule 12(b)(3).

## IV.  REQUEST FOR DECLARATORY JUDGMENT

42.  Plaintiffs hereby incorporate paragraphs 1 through 41 of their Complaint, as though fully set forth herein.

43.  There is a substantial and continuing justiciable controversy between Plaintiffs and Defendant as to Defendant's right to threaten or maintain suit for infringement of said patents,

and as to the validity and scope thereof, and as to whether any of Plaintiffs' equipment infringes any valid claim thereof. The controversy is justiciable and ripe for determination at this time.

44. Plaintiffs, on information and belief, contend that said patents are invalid, unenforceable, and void as the alleged inventions were not patentable.

45. Even assuming that Defendant owned valid and enforceable patents covering the subject matter of a fuel pump or fuel pump module, Plaintiffs have not infringed any claims of said patent.

46. Defendant, with full knowledge of the Plaintiffs' activities in the manufacture, sale and/or distribution of its products, failed to assert its patents for a period of four or more years while Plaintiffs invested time and money in building its business and goodwill.

47. Accordingly, Defendant is now guilty of laches and/or estoppel, and cannot maintain any cause of action against Plaintiffs under said patents.

48. Defendant has so misused the patents in suit and has so used them in violation of the antitrust laws as to render them unenforceable.

49. Pursuant to 28 U.S.C. §§ 2201, and 2202, Plaintiffs request the Court to review the patents and allegedly infringing products, and to make a determination as to whether Plaintiffs' products infringe the patents at issue and to determine that: (a) the inventions are not patentable; (b) the patents were misused and therefore unenforceable; and (c) TI Group's claims are barred by the doctrines of laches and/or estoppel.

## V. ANTI-TRUST VIOLATION

50. Plaintiffs incorporate the allegations set out in Paragraphs 1-49 of the Complaint as though fully set forth herein.

51.  TI Group is the world's leading supplier of fluid storage, transfer and delivery systems including brake, fuel and air conditioning applications.  Moreover,

> (a)  TI Automotive fuel products are now in use in a majority of the vehicles produced in the United States and Europe.
>
> (b)  TI also produces nearly 10-million fuel pumps annually at facilities in Neuss, Germany; Caro, Michigan; and Chalons, France.
>
> (c)  In 2003, TI acquired Pierburg, which manufactures fuel pumps and strengthened TI Group's ability to supply world-wide customer demand in the high performance and original equipment fuel pump replacement market business.
>
> (d)  TI Group employs over 20,000 people at more than 130 facilities in 29 countries on six continents.

52.  TI Group's annual sales came to about $2.3 billion dollars in 2004 and is expected to top that amount in 2005.

53.  TI Group has substantial market share and market power over the sale, distribution and manufacture of fuel pumps, fuel pump modules and fuel pump systems in the United States and the world.

54.  TI Group manufactures fuel pump modules which contain a fuel pump which is inserted into the module.

55.  TI Group's fuel pump module costs approximately $200.  The fuel pump is not sold, nor is it offered for sale separately from the fuel pump module.  Accordingly, when it is necessary to replace the fuel pump, it is necessary to replace the entire fuel pump module.

56.  Thus, when a TI Group fuel pump needs to be replaced by a customer, the customer must not only purchase the fuel pump, but is also required by TI Group to purchase the entire fuel pump module at a higher cost.

57.  Performance Aftermarket's fuel pump is sold separately as a kit, without a module.

58. Performance Aftermarket's Fuel Pumps, P-41 and P-43, although they have a different design than the pumps manufactured by TI Group, can be used to replace TI Group's fuel pump and can be inserted into the existing TI Group module as a replacement part when a TI Group fuel pump fails to function or needs to be replaced.

59. On information and belief, TI Group has a majority of market share of the aftermarket automobile fuel pump market. Performance Aftermarket's Fuel Pumps are sold as kits and can be inserted into a variety of plastic modules.

60. Prior to filing of this lawsuit, on or about October 26, 2005, Performance Aftermarket announced that it intended to begin active marketing and sales of its Fuel Pumps to United States buyers, but has deferred selling the subject fuel pumps because of TI Group's filing of its patent lawsuit. As a result, Performance Aftermarket has lost sales and profits that it would have made but for TI Group's conduct.

61. On information and belief, TI Group's fuel pumps generally fail, or need to be replaced before the module, which itself costs about $200.

62. On information and belief, TI Group makes substantial profits from sales of automobile aftermarket fuel pumps and modules in the United States by bundling the sale of its module to its aftermarket fuel pump, which is not sold separately from the fuel pump module.

63. On information and belief TI Group possesses over 90% of the United States aftermarket automobile fuel pump market with respect to the subject Fuel Pumps distributed by Performance Aftermarket. TI Group, on information and belief, similarly has over 80% market share on other fuel pumps carried by Performance Aftermarket.

64. In contrast, Plaintiffs have barely .005% of the United States aftermarket automobile fuel pump market.

65. Performance Aftermarket is a small limited partnership that is acquiring the automobile fuel pump aftermarket business from G & C Automotive. In turn, G & C Automotive is a family-owned business that has been generally involved in the automotive supply business in the United States since 1978, but did not expand into the aftermarket automotive fuel pump market until 2002.

(a) As previously set out, G & C Automotive and Performance Electric's fuel pumps and related products are intended primarily for export only.

(b) G & C Automotive and Performance Electric have only 21 employees in two locations, both warehouses, in Sugar Land, Texas.

(c) G & C Automotive and Performance Electric's combined annual sales for 2004 was about $8.2 million dollars and may come to about $10 million dollars in 2005.

66. Section 2 of the Sherman Act provides, in pertinent part, states that: "Every person who shall monopolize, or attempt to monopolize, or combine, or conspire with any other person or persons, to monopolize any part of the trade or commerce among the States, or with foreign nations, shall be deemed guilty of a misdemeanor...."

67. When TI Group filed the Michigan Action, it knew, or should have known that its patent infringement allegations were baseless and that no reasonable litigant could realistically expect success on the merits of the complaint filed in the Michigan Action.

68. In fact, TI Group's filing of the Michigan Action, was nothing more than a sham lawsuit to conceal its attempt to interfere with Plaintiffs' ability to compete within the world-wide and United States aftermarket automotive fuel pump market and intended specifically to increase and/or maintain its market share within the United States aftermarket automotive fuel pump market.

69.     For these reasons, TI Group's conduct constitutes a violation of Section 2 of the Sherman Act in that TI Group is attempting to gain and/or maintain monopoly power in the world-wide and United States aftermarket automotive fuel pump market.  15 U.S.C. § 2.

## VI.  PATENT MISUSE

70.     Plaintiffs incorporate the allegations set out in Paragraphs 1-69 of the Complaint and incorporates each paragraph as though fully set forth herein.

71.     By asserting, *inter alia*, that its patents cover the entire range of component parts set out in its complaint, TI Group has impermissibly attempted to broaden the scope and substance of its alleged patent grant in bad faith, with improper purpose, and with anti-competitive effect.

72.     Performance Aftermarket is entitled to a declaratory judgment that TI Group has engaged in patent misuse and that, as a result, the '701, '714, and '819 patents are unenforceable until the patent misuse is purged and the effects thereof are dissipated.

## VII.  BUSINESS DISPARAGEMENT

73.     Plaintiffs incorporate the allegations set out in Paragraphs 1-72 of the Complaint as though fully set forth herein.

74.     Based on the facts and circumstances alleged above, TI Group is and was the source of false rumors and statements that Performance Aftermarket was counterfeiting products.

75.     TI Group's wrongful conduct, misstatements and misrepresentations have deceived and have a tendency to deceive a substantial segment of Performance Aftermarket's and G & C Automotive's existing and prospective clients.  Further, TI Group's wrongful conduct, misstatements and misrepresentations have influenced and are likely to influence the purchasing decisions of Plaintiffs' existing and prospective clients.  As a result, TI Group's

wrongful conduct, misstatements and misrepresentations have injured and are likely to continue to injure Performance Aftermarket and G & C Automotive.

76.    Plaintiffs are entitled to declaratory judgment that TI Group engaged in business defamation and to an award of damages in an amount to be established at trial.

## VII.  ATTORNEYS' FEES

77.    Pursuant to 35 U.S.C. § 285, 15 U.S.C. § 15, and/or other applicable state or federal law, Plaintiffs also request that they be awarded their costs and attorneys' fees, and request leave of court to submit their application for fees and costs.

## VIII.  PUNITIVE DAMAGES

78.    TI Group acted intentionally, maliciously, wantonly, willfully, recklessly, and with a total disregard for Plaintiffs' rights.

79.    Accordingly, Plaintiffs are entitled to an award of punitive and/or exemplary damages in an amount to be determined by the jury.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

(a)    Entry of judgment that Defendant is without right or authority to threaten or to maintain suit against Plaintiffs or their customers for alleged infringement of Letters Patent Nos. 4,860,714, 5,452,701, and 6,227,819; that said patents are invalid, unenforceable, and void in law; and that said patents are not infringed by Plaintiffs because of the making, selling, or using of any apparatus made or sold or used by Plaintiffs;

(b)    Entry of a preliminary and permanent injunction enjoining Defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with it who receive actual notice thereof from initiating infringement litigation and from threatening Plaintiffs or any of their customers, dealers, agents, servants, or employees, or any prospective or present sellers, dealers, or users of Plaintiffs' devices or apparatus, with infringement litigation or charging any of them either

15

verbally or in writing with infringement of Letters Patent Nos. 4,860,714, 5,452,701, and 6,227,819, because of the manufacture, use, or selling or offering for sale of apparatus made by Plaintiffs, to be made permanent following trial;

(c)     Entry of a preliminary and permanent injunction enjoining Defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with it who receive actual notice thereof from misrepresenting the scope and substance of Letters Patent Nos. 4,860,714, 5,452,701, and 6,227,819 to Plaintiffs' customers and/or prospective customers;

(d)     That Defendant be adjudged to have violated Section 2 of the Sherman Act;

(e)     Plaintiffs be awarded damages and lost profits in the amount of at least $10,000,000 for Defendant's violation of Section 2 of the Sherman Act and that, pursuant to Section 15 of the act, these damages be trebled;

(f)     Plaintiffs be awarded compensatory damages and lost profits in an amount to be determined at trial;

(g)     Plaintiffs be awarded punitive damages in an amount to be determined at trial;

(h)     That Defendant be enjoined from further violation of the anti-trust laws;

(i)     Plaintiffs be awarded their costs and attorneys fees incurred in this action, as allowed by law; and

(j)     Such other relief as the Court may deem proper, just and equitable.

Respectfully submitted,

/s/ Stephen R. Cochell
Stephen R. Cochell
Texas State Bar. No. 24044255
Federal Bar No. 279236
EPSTEIN BECKER GREEN
WICKLIFF & HALL, P.C.
1000 Louisiana, Suite 5400
Houston, Texas 77002
Telephone No. (713) 750-3100
Facsimile No. (713) 750-3101
ATTORNEYS FOR PLAINTIFFS

16

OF COUNSEL:

Michelle R. Moore
Texas State Bar No. 24025544
EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C.
1000 Louisiana, Suite 5400
Houston, Texas 77002
Telephone No. (713) 750-3100
Facsimile No. (713) 750-3101