# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| PERFORMANCE AFTERMARKET | § | |
| PARTS GROUP, LTD., *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-4251 |
| | § | |
| TI GROUP AUTOMOTIVE | § | |
| SYSTEMS, INC., | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

This patent and antitrust case is before the Court on the Motion to Dismiss and for Protective Order [Doc. # 31] filed by Defendant TI Group Automotive Systems, LLC ("TI Group"). Plaintiffs Performance Aftermarket Parts Group, Ltd. ("Performance") and G&C Automotive Distributors, Inc. ("G&C") filed a response [Doc. # 37], and TI Group filed a reply [Doc. # 42]. Based on the Court's review of the full record in this case, specifically Plaintiffs' Amended Complaint and Request for Declaratory Relief ("Complaint") [Doc. # 19], and the application of governing legal authorities, the Court **grants** the Motion to Dismiss as to the sham litigation and patent misuse claims and **denies** the Motion to Dismiss as to all other claims. The Motion for Protective Order is **denied as moot.**

**I.     BACKGROUND**

Performance is a limited partnership that supplies automotive products to companies primarily outside the United States, and G&C is a corporation whose principals own Performance. Plaintiffs allege that TI Group is the leading manufacturer of, *inter alia*, automotive fuel pumps and fuel pump modules.[1] TI Group markets both original and replacement automotive fuel pumps and fuel pump modules, while Performance sells only aftermarket replacement parts. Plaintiffs allege that, in the United States, TI Group refuses to sell replacement fuel pumps separately from the entire fuel pump module.

TI Group is the owner of three patents mentioned in the Complaint. Plaintiffs allege that TI Group claims that Performance's replacement fuel pumps infringe TI Group's patents. Plaintiffs maintain that, although their fuel pumps can be inserted into existing TI Group fuel pump modules in certain Chrysler automobiles, their fuel pumps are non-infringing.

Plaintiffs' sales of aftermarket replacement fuel pumps in Mexico and Brazil have dramatically increased in the past few years. In those countries, TI Group sells its replacement fuel pumps separately from the fuel pump modules.

---

[1]     The fuel pump is located within the fuel pump module.

In October 2005, Performance announced that it intended to begin active marketing of its aftermarket replacement fuel pumps in the United States.

In November 2005, Plaintiffs and TI Group attended the Automotive Aftermarket Products Exposition ("AAPEX"), a large trade show attended by all the major customers in the automotive parts business. Plaintiffs allege that they learned during the AAPEX that it was being said that Performance's products were counterfeit. Plaintiffs allege on information and belief that TI Group was the source of these statements. Plaintiffs also allege that after the counterfeiting statements were circulated at the AAPEX, distributors who had expressed interest in distributing Performance replacement fuel pumps suddenly lost interest.

After the AAPEX, on November 10, 2005, TI Group filed a patent infringement lawsuit against Performance in the United States District Court for the Eastern District of Michigan ("the Michigan Lawsuit"). Plaintiffs allege that TI Group filed the Michigan Lawsuit without first conducting a reasonable investigation that would have revealed that Performance's products do not infringe TI Group's patents. Performance moved to dismiss the Michigan Lawsuit for lack of personal jurisdiction and, prior to a ruling on the motion, TI Group dismissed the Michigan Lawsuit voluntarily.

Plaintiffs then filed this lawsuit seeking a declaratory judgment that TI Group's patents are invalid and unenforceable and that, in any event, Plaintiffs have not

infringed TI Group's patents. Plaintiffs also seek a declaration that TI Group is barred from maintaining a cause of action for patent infringement because of laches and estoppel. Plaintiffs also assert antitrust causes of action based on illegal tying, illegal monopoly power, and sham litigation. Plaintiffs also assert patent misuse and business disparagement, and they seek attorneys' fees and punitive damages.

Defendant moved to dismiss the antitrust, patent misuse, and business disparagement claims. Defendant also sought a protective order against discovery on these claims until the Court rules on the Motion to Dismiss.

## II. STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (citing *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)). The complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true. *Id*. A claim may only be dismissed if the plaintiff is not entitled to relief under any set of facts or any possible theory of recovery that he could prove consistent with the allegations in his complaint. *Id*. (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). In deciding whether a claim should be dismissed, this Court must determine whether the complaint states a valid claim for relief when the pleading is construed in the light most favorable to the plaintiff and with

every doubt resolved on the plaintiff's behalf. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

### III. ANTITRUST AND PATENT MISUSE CLAIMS

Defendant argues that Plaintiffs' antitrust and patent misuse claims are barred by the *Noerr-Pennington* doctrine. Defendant also argues that Plaintiffs' antitrust claims fail because Plaintiffs do not identify a legally cognizable relevant market, and that the tying claims fail because Plaintiffs do not allege separate products and separate markets. Defendant argues that Plaintiffs fail to allege facts to support their business disparagement claim. The issues have been fully briefed and are ripe for decision.

#### A. *Noerr-Pennington* Doctrine

Plaintiffs allege that Defendant filed the Michigan Lawsuit with an anticompetitive purpose and without proper pre-filing investigation. Plaintiffs complain specifically that Defendant filed the Michigan Lawsuit while the parties were engaged in discussions to attempt to resolve their dispute. Plaintiffs argue that the antitrust and patent misuse claims are barred by the *Noerr-Pennington* doctrine.[2]

The *Noerr-Pennington* doctrine provides that a party who petitions the government for governmental action favorable to them cannot be prosecuted under the

---

[2] The doctrine has its origins in two United States Supreme Court cases: *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers of America v. Pennington,* 381 U.S. 657 (1965).

antitrust laws even though the petition is motivated by anticompetitive intent. *See Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859 (5th Cir. 2000), *cert. denied*, 532 U.S. 905 (2001). The *Noerr-Pennington* protection extends to petitioning activities directed to the courts. *See id.* (citing *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991)). Conclusory allegations of misconduct are inadequate to deprive a party of *Noerr-Pennington* protection. *See Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*, 802 F. Supp. 1544, 1552 (S.D. Tex. 1991).

Plaintiff's sham litigation antitrust claim and its patent misuse claim are based on the filing of the Michigan Lawsuit.[3] Plaintiffs allege that the Michigan Lawsuit was "nothing more than a sham lawsuit to conceal [TI Group's] attempt to interfere with Plaintiffs' ability to compete [and] to increase and/or maintain its market share within the United States aftermarket automotive fuel pump market . . .." *See* Complaint, ¶ 107. Plaintiffs allege that TI Group's allegations in the Michigan Lawsuit are a misuse of its patents.

TI Group filed a patent infringement action to protect its patent rights. Before Performance filed an answer, TI Group dismissed the Michigan Lawsuit voluntarily. Plaintiffs have failed to allege, other in most conclusory fashion, that the filing of the

---

[3] Contrary to Defendant's argument, the tying and monopoly power antitrust claims are not based on the Michigan Lawsuit and, therefore, are not barred by the *Noerr-Pennington* doctrine.

Michigan Lawsuit constituted either patent misuse or sham litigation for purposes of antitrust litigation such that TI Group would not be entitled to the protection of the *Noerr-Pennington* doctrine. Defendant is entitled to dismissal of the sham litigation antitrust claim and the patent misuse claim.[4]

### B.    Antitrust Claims: Relevant Market

Plaintiffs allege that Defendant refuses to sell in the United States replacement fuel pumps separate from the fuel pump module, thereby illegally tying the purchase of a replacement fuel pump to the purchase of the fuel pump module. Plaintiffs also allege that Defendant controls approximately ninety percent (90%) of the market for aftermarket replacement fuel pumps and fuel pump modules and uses its dominant market power to coerce distributors not to purchase Plaintiffs' products.

Defendant argues that these antitrust claims should be dismissed for failure to identify a proper "relevant market," citing *Surgical Care Center of Hammond, LLC v. Hospital Service Dist. No. 1*, 309 F.3d 836, 839-40 (5th Cir. 2002). Plaintiffs identify the relevant market for purposes of their antitrust claims as "aftermarket replacement

---

[4] Plaintiffs are not entitled to attempt again to replead their sham litigation antitrust or patent misuse claims. They have failed in both the original complaint and the amended complaint to allege these claims adequately. Moreover, it appears from Plaintiffs' allegations and arguments presented thus far that their theory of the claims does not support the sham litigation or patent misuse claims, an issue that repleading would not address.

fuel pumps and fuel pump modules for use in Certain Chrysler Automobiles in the United States." *See* Complaint, ¶ 86.

Defendant argues that Plaintiffs' identified relevant market is not legally cognizable because Plaintiffs do not allege that TI Group has ever changed its policy with respect to selling its fuel pumps in the United States only within the fuel pump module. In support of its argument, Defendant cites *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992), and *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 783 (5th Cir. 1999).

The *Kodak* decision related to a ruling on a motion for summary judgment. As noted by the Fifth Circuit in *Alcatel*, the *Kodak* "Court simply was not prepared to permit [a] factual determination to be made at the summary judgment stage." *See Alcatel*, 166 F.3d at 782. The *Alcatel* case was presented to the Fifth Circuit after a full jury trial and ruling on a motion for judgment as a matter of law. *Id.* at 783. The Fifth Circuit discussed rulings by other circuits that a change in the defendant's policy is a crucial factor in establishing an aftermarket monopoly claim. *Id.* But noting that when identifying the relevant market for purposes of an antitrust claim, "the reality of the marketplace must serve as the lodestar," the Fifth Circuit held only that the plaintiff's description of the relevant market was inconsistent with market realities in that particular case. *Id.* For that reason *and* because there was a failure of proof on

relevant issues, the Fifth Circuit rejected the plaintiff's aftermarket monopoly claim. *Id.* at 784.

Neither *Kodak* nor *Alcatel* supports dismissal of Plaintiffs' antitrust claims at the pleading stage. Plaintiffs have identified what they believe is the relevant market. Whether the relevant market as identified by Plaintiffs is an appropriate one must be determined following reasonable time for discovery, a summary judgment motion, and/or trial on the issue.

### C.     Tying Claim

Plaintiffs' tying claim is based on Plaintiffs' allegation that Defendant illegally ties purchase of a replacement fuel pump to purchase of the fuel pump module. Defendant moves to dismiss Plaintiffs' tying antitrust claim because (1) Plaintiffs fail to allege separate products and separate markets, and (2) Plaintiffs fail to allege antitrust injury. The Court has carefully reviewed the Complaint and concludes that the tying claim is adequately pled.

Plaintiffs allege that the replacement fuel pump and the fuel pump module are separate products. *See* Complaint, ¶ 88. Although Defendant disagrees,[5] the Court is

---

[5]     Defendant argues that the marketing of fuel pumps and fuel pump modules together is analogous to the marketing of left shoes and right shoes together. Plaintiffs' allegations, however, indicate that the situation is more analogous to the marketing of shoes and shoe laces together.

required to accept Plaintiffs' allegation as true. Plaintiffs have clearly alleged separate products, and dismissal for inadequate pleading in that respect is not appropriate.

Defendant also argues that Plaintiffs have not alleged separate markets for fuel pump and fuel pump modules. Plaintiffs allege, however, that but for Defendant's dominance in the manufacture of aftermarket replacement parts, Performance would have entered the United States market just as it has in Mexico and Brazil. *Id.*, ¶¶ 92, 94. Plaintiffs adequately allege a market for replacement fuel pumps separate from replacement fuel pump modules. Defendant disagrees with Plaintiffs' allegation but, again, the allegations are adequate at this stage, and Defendant's request for dismissal on this ground is denied.

Defendant also argues that Plaintiffs tying claim fails because they fail to allege antitrust injury. An "antitrust injury" is simply the type injury that the antitrust laws were intended to prevent and that results from the defendant's unlawful conduct. *See Patel v. Midland Memorial Hosp.*, 298 F.3d 333, 346 (5th Cir. 2002) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Plaintiffs allege that TI Group's illegal tying arrangement – selling replacement fuel pumps only with replacement fuel pump modules – has kept Performance from entering the United States market, thereby restricting competition. This allegation that TI Group's conduct has caused injury to competition is adequate to satisfy the "antitrust injury" element of

Plaintiffs' tying claim.  The Court denies Defendant's Motion to Dismiss the tying claim.

## IV.     BUSINESS DISPARAGEMENT CLAIM

The elements of a business disparagement claim under Texas law are (1) the publication of disparaging remarks, (2) falsity, (3) malice, (4) lack of privilege, and (5) special damages.  *See Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987); *MKC Energy Investments, Inc. v. Sheldon*, 182 S.W.3d 372, 376 (Tex. App. – Beaumont 2005, no pet.).  Plaintiffs allege that statements were made at the AAPEX that Plaintiffs' products were counterfeit.  *See* Complaint, ¶ 52.  Plaintiffs allege, on information and belief, that TI Group was the source of these statements.  *Id.*, ¶ 54.  Plaintiffs allege that the counterfeiting statements were false and were designed to injure Plaintiffs' business reputation.  *Id.*, ¶ 53.  Plaintiffs allege that the counterfeiting remarks circulated at the AAPEX caused Performance to lose substantial sales and profits because United States distributors who had previously expressed interest in distributing Performance's fuel pumps were no longer interested.  *Id.*, ¶¶ 59, 55.

Plaintiffs adequately allege the elements of a business disparagement claim.  Their description of the disparaging remarks is adequately specific, and the alleged special damages are sufficient for purposes of notice pleading in the federal courts.  *See*

Fed. R. Civ. P. 8(a). Additional information regarding the actual source of the counterfeiting statements, the names of the distributors, and the extent of their prior interest can be determined through discovery and, if appropriate, may support a later motion for summary judgment. Dismissal of the business disparagement claim under Rule 12(b)(6), however, is inappropriate.

## V.   CONCLUSION AND ORDER

Although the *Noerr-Pennington* doctrine does not preclude Plaintiffs' antitrust claim in its entirety, it does preclude the sham litigation antitrust claim and the patent misuse claim. Plaintiffs have adequately alleged their tying and monopolization antitrust claims and their business disparagement claim. Additional detail can be determined through the discovery process. Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss [Doc. # 31] is **GRANTED in part and DENIED in part**. It is further

**ORDERED** that Defendant's Motion for Protective Order [Doc. # 31] is **DENIED AS MOOT**.

SIGNED at Houston, Texas, this **11th** day of **August, 2006**.

_____
Nancy F. Atlas
United States District Judge