IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PERFORMANCE AFTERMARKET PARTS GROUP, LTD., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-05-4251 |
| TI GROUP AUTOMOTIVE SYSTEMS, INC., | § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This patent case is before the Court on a dispute between the parties regarding Defendant TI Group Automotive Systems, LLC's ("TI Group") assertion of privilege as to certain documents requested by Plaintiff Performance Aftermarket Parts Group, Ltd. ("Performance") in discovery. The Court has reviewed *in camera* the documents in issue[1] and rules on the privilege assertions as explained herein.

**I.     LEGAL PRINCIPLES REGARDING ASSERTIONS OF PRIVILEGE**

"A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

---

[1] Document 14 on TI Group's list of 19 privileged documents was not provided to the Court and, therefore, has not been reviewed. Document 15 on the list has now been produced and is no longer in dispute.

### A.    Attorney-Client Privilege

The attorney-client privilege exists to protect both "the giving of professional advice [and] the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). The privilege protects from disclosure confidential communications between a client and his attorney "made for the purpose of facilitating the rendition of professional legal services to the client . . .." *International Ins. Co. v. RSR* Corp., 426 F.3d 291, 299 (5th Cir. 2005) (quoting TEX. R. EVID. 503(b)).[2] "A communication is only "confidential" for the purposes of the attorney-client privilege if it is not intended to be disclosed to a third party." *Id.* at 299 n. 27 (citing TEX. R. EVID. 503(a)(5)).

The attorney-client privilege protects confidential communications made between "representatives of the client" where the communications are made "for the purpose of facilitating the rendition of professional legal services." *See* TEX. R. EVID. 503(b)(1)(D). A "representative of the client" is defined to include persons "having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client" and "any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while

---

[2]    Texas law applies to the claims of attorney-client privilege in this civil action. *See* FED. R. EVID. 501.

acting in the scope of employment for the client." TEX. R. EVID. 503(a)(2). The attorney-client privilege covers communications made by corporate employees concerning matters pertinent to their job tasks if the information is sought by the corporation's attorney in order to formulate and render legal advice to the corporation. *See Upjohn Co.*, 449 U.S. at 394-95.

Under Texas law, a "subject-matter" test applies to extend the attorney-client privilege to a broad range of communications, "including those made by individuals outside the corporation's control group." *In re Avantel, S.A.*, 343 F.3d 311, 318 (5th Cir. 2003). "The subject matter test is met where the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment." *In re E.I. DuPont de Nemours and Co.*, 136 S.W.3d 218, 225 n. 3 (Tex. 2004) (internal quotations and citations omitted).

The attorney-client privilege also applies to notes that are not themselves communications "if disclosure would reveal the substance of any confidential communications between the attorney and client that were made in the course of seeking or giving legal advice." *Robinson v. Texas Auto. Dealers Ass'n.*, 214 F.R.D. 432, 440 (E.D. Tex. 2003), *vacated to the extent district court ordered production of*

*certain documents*, 2003 WL 21911333 (5th Cir., July 25, 2003); *see also Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134-35 (E.D. Tex. 2003) (holding that attorney-client privilege applies to "third parties who assist an attorney in rendering legal advice" and to "documents produced as a result of those communications").

### B. Work-Product Privilege

"The work product privilege applies to documents 'prepared in anticipation of litigation.'" *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting FED. R. CIV. P. 26(b)(3)). The privilege can apply where litigation is not imminent, "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Id.*

If documents qualify for the work product privilege, they may still be discoverable if the "party seeking discovery has substantial need of the materials [and] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *See* FED. R. CIV. P. 26(b)(3).

## II. TI GROUP'S ASSERTION OF PRIVILEGE

### A. Documents That Have Been Redacted

Documents 1-4 and 12 have been produced with certain portions redacted based on an assertion of attorney-client privilege. The only redacted information from

Document 12 is the "From/To/Date/Subject" information. This information is not privileged and TI Group must produce an unredacted version of Document 12.

The redacted portions of Documents 1 and 4 are not privileged because they are not communications made for the purpose of seeking legal advice. Unredacted copies must be produced.

The redacted portion of Document 3 is an email from Rich Gibbs, an employee of TI Group, to Edward Duplaga, General Counsel for TI Group. The same information is redacted from Document 4, plus the response from Duplaga to Gibbs. In Gibbs's email, several companies other than TI Group are mentioned. In response, Duplaga suggests that Gibbs "pass on" to his colleagues at the companies mentioned by Gibbs. The Gibbs portion of the email is not for the purpose of seeking legal advice, and the Duplaga response indicates that the information was not intended to be confidential but, instead, it was "appropriate" to pass the information on to third parties. For these reasons, the redacted portions of Documents 3 and 4 are not protected by the attorney-client privilege, and TI Group must produce unredacted copies of these documents.

### B.   Documents Relating to Counterfeiting Investigations

TI Group asserts a privilege as to Document 13 and Document 16, documents relating to TI Group's counterfeiting investigations. In general, the documents appear

to be protected by the work product privilege, but certain aspects of them are unclear and the Court is unable to make a final determination without additional information. Consequently, the Court will make inquiry of Duplaga at the May 24, 2007 hearing. TI Group may submit an affidavit of the individual who created each document. If so, the affidavit(s) must be submitted no later than May 22, 2007.

### C. Documents Relating to "Settlement Negotiations" in Other Cases

TI Group asserts a "settlement negotiations" privilege as to Documents 5-11 and Documents 18-19. The documents are primarily letters between counsel for TI Group and counsel for third parties where TI Group claimed patent infringement against a party other than Performance. To support the existence of a "settlement negotiations" privilege, TI Group relies on *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003), a Sixth Circuit case that has not been widely followed and whose reasoning has not been adopted by any court within the Fifth Circuit. The District Court for the District of Columbia has rejected the argument that there exists a "settlement negotiations" privilege. *See In re Subpoena Issued to Commodity Futures Trading Comm.*, 370 F. Supp. 2d 201, 208-212 (D.D.C. 2005). This Court finds the analysis in the *Commodity Futures* case to be well-reasoned and persuasive, and likewise concludes that no "settlement negotiations" privilege exists. TI Group must produce Documents 5-11 and 18-19.

Even were the Court to find the existence of a settlement negotiations privilege, the Court would not find its protection as expansive as TI Group argues. For example, Document 5 is a letter to a TI Group Vice President from the attorney for a third party accused of patent infringement. In the letter, the attorney adamantly denies that his client's product infringes TI Group's patent and makes no mention of settlement. Document 6 is a three-sentence cover letter attached to copies of two patents. The other documents, to the most part, have only minimal discussion of settlement. As a result, even if the Court were to recognize a "settlement negotiations" privilege, that privilege would not apply for the most part to the documents in dispute.

### III.   CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that TI Group shall produce the documents as set forth herein by **May 24, 2007**. It is further

**ORDERED** that any affidavits in support of TI Group's claim of privilege as to the documents relating to counterfeiting investigations shall be submitted no later than **May 22, 2007.**

SIGNED at Houston, Texas, this **11th** day of **May, 2007**.

_____
Nancy F. Atlas
United States District Judge