**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PERFORMANCE AFTERMARKET | § | |
| PARTS GROUP, LTD., *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-4251 |
| | § | |
| TI GROUP AUTOMOTIVE | § | |
| SYSTEMS, INC., | § | |
|     Defendant. | § | |

**<u>MEMORANDUM AND ORDER</u>**

This patent and antitrust case is before the Court on the Motion for Summary

Judgment Regarding Plaintiffs' Antitrust and Related Claims ("Motion") [Doc. # 159]

filed by Defendant TI Group Automotive Systems, LLC ("TI Group").  Plaintiffs

Performance Aftermarket Parts Group, Ltd. ("Performance") and G&C Automotive

Distributors, Inc. ("G&C") filed a Response [Doc. # 172], and TI Group filed a Reply

[Doc. # 189].  Plaintiffs then filed a Supplemental Response [Doc. # 197], to which

Defendant filed a Surreply [Doc. # 202].  Based on the Court's review of the complete

record in this case, and the application of governing legal authorities, the Court **grants**

the Motion.

P:\ORDERS\11-2005\4251MSJAntitrust.wpd   080123.1102

I.    **BACKGROUND**

Plaintiffs and Defendant market automotive fuel pumps.  TI Group markets both

original and replacement automotive fuel pumps and fuel pump modules, while

Performance sells only aftermarket replacement parts.  Plaintiffs filed this lawsuit,

asserting a variety of antitrust claims.  Specifically, Plaintiffs alleged that Defendant

refuses to sell in the United States replacement fuel pumps separate from the fuel pump

module, thereby illegally tying together the purchase of a replacement fuel pump and

the purchase of the fuel pump module ("tying claim").  Plaintiffs also alleged that

Defendant has monopoly power in the market for aftermarket replacement fuel pumps

and fuel pump modules and uses its monopoly power to coerce distributors not to

purchase Plaintiffs' products ("improper maintenance of monopoly power claim").

Plaintiffs also asserted a claim for punitive damages and for attorneys' fees.

Defendant challenged Plaintiffs' standing to assert the antitrust claims.  In the

interests of efficiency and preservation of resources, the Court limited discovery on the

antitrust claims to the standing issues.  That discovery is now complete.

Defendant has moved for summary judgment on Plaintiffs' antitrust claims, and

on the request for punitive damages and attorneys' fees.  Defendant argues, *inter alia*,

that Plaintiffs lack standing to assert the antitrust claims because they have not

presented evidence of an injury caused by TI Group and have not defined a legally

cognizable "relevant market" necessary for the existence of antitrust injury.[1]  Defendant

also argues, for purposes of the tying claim, that Plaintiffs lack standing because they

are not competitors or consumers in the market for the tied product – replacement fuel

pump modules.  The Motion has been fully briefed and is now ripe for decision.

## II.    STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails

to make a sufficient showing of the existence of an element essential to the party's

case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.

1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil

Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment,

the Court must determine whether "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with any affidavits filed in support of

the motion, show that there is no genuine issue as to any material fact and that the

---

[1]    Where, as here, the plaintiff fails to present evidence to raise a genuine issue of material fact
on the issues of injury caused by the defendant or of antitrust injury, the preferred course is
to grant summary judgment for the defendant on the merits. *See Doctor's Hosp. of Jefferson,
Inc. v. Southwest Med. Alliance, Inc.*, 123 F.3d 301, 306 (5th Cir. 1997).  Here, however, the
Court limited Defendant's discovery and summary judgment motion to the threshold standing
issue.  For this reason, the Motion will be considered and analyzed as a challenge to standing.

moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to

the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden.  *Morris v. Covan World Wide Moving, Inc.*,  144 F.3d 377, 380 (5th Cir. 1998).  Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported

statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

## III.   STANDING TO ASSERT ANTITRUST CLAIMS

"Standing to pursue an antitrust suit exists only if a plaintiff shows: 1) injury-in-fact, an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties are not better situated to bring suit." *Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance, Inc.*, 123 F.3d 301, 305 (5th Cir. 1997). Therefore, to have standing to assert an antitrust claim, the plaintiff must establish an injury caused by the defendant and an antitrust injury. *See Norris v. Hearst Trust*, 500 F.3d 454, 465 (5th Cir. 2007). Antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' conduct unlawful." *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 334 (1990).

Defendant argues that Plaintiffs lack antitrust standing as to both antitrust claims because they have failed to present evidence of an injury proximately caused by Defendant's conduct and because they have failed to define a legally cognizable relevant market. Defendant also argues that Plaintiffs lack antitrust standing to assert

the tying claim because they are not competitors or consumers in the market for complete replacement fuel pump modules.[2]

### A.      Injury Caused by TI Group

Plaintiffs allege that TI Group caused them to lose the opportunity to sell their products to Airtex Corporation ("Airtex").  The summary judgment record, however, refutes Plaintiffs' allegations.

Plaintiffs helped sponsor an Overseas Automotive Council ("OAC") lounge and reception area at the 2005 AAPEX Show.  Plaintiffs allege that they met with Dimitri Monge, Airtex's President, during the AAPEX Show and that Monge was very enthusiastic about purchasing Performance replacement fuel pumps and strainers (fuel pump filters).   Airtex later decided not to purchase pumps and strainers from Performance – a decision Plaintiffs assert was coerced by TI Group.  Plaintiffs believe specifically that TI Group told Airtex that Plaintiffs were marketing counterfeit products and that TI Group threatened Airtex to cause it not to purchase Performance products.

---

[2]      Because Defendant is entitled to summary judgment on both antitrust claims based on Plaintiffs' failure to present evidence that raises a genuine issue of material fact on the injury-in-fact and proper plaintiff status elements of antitrust standing, the Court need not decide whether Plaintiffs have identified a legally cognizable "relevant market" for purposes of the antitrust injury element.

Plaintiffs' allegation regarding TI Group's defamatory statements at the AAPEX Show is based on an alleged comment by Anthony Cardez, the Executive Director of the OAC, that there were rumors that Performance was selling counterfeit products. Mr. Cardez denied under oath that he made the alleged statement to Plaintiffs.[3] Plaintiffs' only evidence to support the allegation is the affidavit of Glenn Anthony, an employee of Plaintiff G&C and the Director of Business Development for Performance. Yet Anthony stated only that Cardez told him that there were "rumors going around the AAPEX Show that [Performance] was selling 'counterfeit' products." *See* Affidavit of Glenn Anthony ("Anthony Aff."), Exh. B to Defendant's Reply [Doc. # 189], ¶ 13(a).  Anthony conceded, however, that Cardez told him that he did not know who was circulating the rumors." *See id.*, ¶ 13(b).  There is no evidence whatsoever that TI Group was the source of any rumors about counterfeiting, and Plaintiffs' conjecture is insufficient to raise a genuine issue of material fact.

Plaintiffs also allege that TI Group threatened Airtex – in part by telling Airtex about the patent infringement lawsuit against Performance – to coerce them into deciding not to buy Performance products.[4]  Monge testified clearly and unequivocally

---

[3]     Plaintiffs argue that Cardez's testimony is "simply implausible" and that he is "an industry representative [attempting] to keep his job and avoid becoming entangled in a dispute" between TI Group and Performance. *See* Response, p. 18.

[4]     To the extent Plaintiffs rely on TI Group's patent infringement lawsuit, the Court has held that TI Group's actions in that regard are protected by the *Noerr-Pennington* doctrine. *See* Memorandum and Order [Doc. # 44] entered August 11, 2006, pp. 5-7.

that TI Group never threatened Airtex or gave Airtex any reason to fear adverse consequences from TI Group if Airtex bought Performance products.  *See* Monge Deposition, Exh. D to Motion, pp. 142-43.  Other Airtex employees testified similarly that there were no threats from TI Group and no fears of adverse consequences.  *See* Deposition of Ray Swetman, Exh. H to Motion, pp. 73-74; Deposition of Francis Mongeon, Exh. S to Motion, pp. 87-88.

Plaintiffs have presented no evidence to support their allegation that TI Group threatened Airtex and caused them not to do business with Plaintiffs.  Plaintiffs note that Airtex and TI Group were engaged in mid-term contract negotiations, but the uncontroverted evidence shows that the mid-term negotiations had been contemplated from the inception of the contract.  Moreover, there is no evidence, only supposition, that TI Group could or did use the timing of the contract negotiations to coerce Airtex's decision not to buy fuel pumps from Performance.  Indeed, Anthony testified that he does not know that TI Group threatened or otherwise coerced Airtex, but that he feels that it did because Airtex was enthusiastic at first and then decided not to deal with Plaintiffs.  *See* Anthony Deposition, Exh. A to Motion, pp. 208-09.  Plaintiffs argue, without supporting evidence, that "the *victims* of economic threats by monopolists do not generally complain of, or disclose that they were the victim of threats, pressure and other forms of economic duress."  *See* Response, p. 27.  Plaintiffs' belief, based on

nothing more than Anthony's belief or surmise, that no fewer than three Airtex employees would perjure themselves to protect TI Group is pure speculation and does not raise a genuine issue of material fact.

Plaintiffs have failed to present evidence that Airtex decided not to buy their products because of misconduct by TI Group.  To the contrary, the uncontroverted evidence in the record indicates that Airtex had at least two legitimate business reasons not to deal with Performance.  First, Airtex conducted independent testing of Performance's replacement fuel pumps and strainers.  The strainers failed to meet Airtex's minimum standards.  The fuel pumps met minimum standards but Curtis Ulm, Airtex's chief engineer, determined that the test results were not adequate to warrant a 500-hour durability test.  *See* Ulm Deposition, Exh. J to Motion, p. 30.  Plaintiffs have no evidence that contradicts Ulm's testimony.  Instead, Plaintiffs argue that Ulm is not telling the truth because he is a friend of TI Group's Sales Manager.  *See* Response, p. 29.  Plaintiffs also assert that, if Ulm were telling the truth, he would have written it in an email.[5]  *See* Response, pp. 28-29.  Plaintiffs state that it is "for the jury

---

[5]  Indeed, Plaintiffs argue that if Ulm truly believed that Performance's fuel pumps were in any way deficient, "it was his job to express that opinion in his email to Monge . . .." *See* Response, p. 29 (emphasis in original).  Ulm explained clearly that Airtex employees do not "always put everything in writing." *See* Ulm Depo., p. 17.  Ulm further testified under oath, "we're a small company.  We all know each other.  We see each other many times a day. . . . If a decision can be made, it's not always formally put in writing." *See id.*  Plaintiffs have presented no evidence to the contrary.

to determine" whether Ulm is telling the truth.  The jury, however, decides only genuinely disputed fact issues and Plaintiffs have not presented evidence disputing Ulm's testimony.

As a second asserted basis for its decision not to deal with Plaintiffs, Airtex buyer Kim Hungerford asked Performance if Airtex representatives could visit the production facilities in China.  Anthony responded unequivocally that clients are not allowed to visit the facilities because of confidentiality concerns.  *See* Email, Exh. X, p. EBGWH-004975.  Tim Schoenborn, Airtex's Material Manager, responded that he would "have a problem with" not permitting the facilities inspection, and Anthony responded that "without sounding arrogant, I am not privy to the idea of letting a potential 'competitor' see our plant operations . . .." *See id.*, p. EBGWH-004974. Hungerford later testified that "If we ask to go see their facility and they refuse to let us see their facility, the chances of us doing business with them are pretty much slim to none."  *See* Hungerford Deposition, Exh. T to Motion, pp. 34-34.   Indeed, Hungerford expressed surprise that Airtex even agreed to test Performance's products after it refused to allow the facilities inspection.  *See id.* at 58.

Plaintiffs have presented no evidence that contradicts Hungerford's testimony. Instead, Plaintiffs explain that their initial refusal was simply an opening position in the

negotiations.  There is no evidence, however, that Airtex had any reason to know that

Plaintiffs' refusal was anything more than a firm "no."

Plaintiffs have failed to present evidence to raise a genuine issue of material fact

regarding their claim that TI Group improperly coerced Airtex into refusing to conduct

business with Performance.  TI Group, on the other hand, has presented uncontroverted

evidence of legitimate business reasons for Airtex's decision.  Plaintiffs' persistent

cries of "lie" and "conspiracy" are insufficient to avoid summary judgment.  Absent

evidence of an injury to Plaintiffs proximately caused by TI Group's alleged

misconduct, Plaintiffs cannot establish antitrust standing and Defendant is entitled to

summary judgment on both antitrust claims.[6]

### B.      Plaintiffs are Not Competitors in the Tied Market

An antitrust tying claim involves a seller selling one product only if the buyer

also purchases a second product – the "tied" product.  *See Apani Southwest, Inc. v.*

*Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 625 (5th Cir. 2002).  It has long been

established that "the area of the economy threatened with a breakdown of competitive

conditions because of a tying agreement is the market for the tied product; and those

who will be proximately injured thereby . . . are competitors in the *tied* product."

---

[6]      Because their antitrust claims fail, Plaintiffs are not entitled to punitive damages or attorneys'
fees on those claims.

*Southern Concrete Co. v. U.S. Steel Corp.*, 535 F.2d 313, 317 (5th Cir. 1976) (emphasis added).

Plaintiffs' position throughout this case is that Defendant will sell a replacement fuel pump only as part of a complete replacement fuel pump module. *See, e.g.*, Second Amended Complaint [Doc. # 92], ¶ 18 ("On information and belief, TI Group refuses to sell fuel pumps within the United States separately from the entire fuel pump module in Certain Chrysler model cars."). Consequently, the fuel pump is the tying product and the fuel pump module is the tied product. It is undisputed that Plaintiffs are neither competitors nor consumers of replacement fuel pump modules and, as a result, they do not have proper plaintiff status for purposes of antitrust standing.

Plaintiffs attempt to avoid summary judgment by arguing, for the first time and contrary to its position throughout this lawsuit, that the replacement fuel pump is the tied product. Plaintiffs have never, however, argued or presented evidence that TI Group refuses to sell a replacement fuel pump module unless the buyer agrees to purchase a replacement fuel pump also. Plaintiffs' attempt at this stage of the proceedings to revise its tying theory in a manner unsupported by any evidence or prior argument is without merit. Defendant is entitled to summary judgment on Plaintiffs' tying claim.

## IV.   CONCLUSION AND ORDER

Plaintiffs have failed to present evidence that raises a genuine issue of material fact regarding the injury-in-fact and proper plaintiff status elements of antitrust standing.  As a result, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment Regarding Plaintiffs' Antitrust and Related Claims [Doc. # 159] is **GRANTED**.

SIGNED at Houston, Texas, this **23rd** day of **January, 2008**.

Nancy F. Atlas
United States District Judge